NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted February 4, 2009[*]
Decided February 5, 2009

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-3042

| | |
|---|---|
| ANTWAN SLATER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 07-C-841 |
| JEANANNE GREENWOOD, et al., | |
| *Defendants-Appellees*. | William C. Griesbach, |
| | *Judge*. |

**O R D E R**

Antwan Slater, an inmate at the Green Bay Correctional Institution, claimed in this lawsuit under 42 U.S.C. § 1983 that Richard Heidorn, a prison doctor, and Jeananne

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

Greenwood, the manager of the prison's Health Services Unit (HSU), violated the Eighth Amendment when they delayed treatment of a sty—inflammation of the eyelid gland—that developed under his left eye. The district court granted summary judgment to the defendants and we affirm.

We recount the evidence in the light most favorable to Slater. *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). On April 2, 2007, Slater submitted a Health Service Request form complaining of skin irritation, constipation, and a large lump under his eye. On April 9 Nurse Kathy Lemens saw Slater and mentioned in her progress notes that Slater's "pea size" lump under his left eyelid was not tender, that he had no visual problems, that she recommended warm compresses, and that she would schedule an assessment by a doctor. She scheduled the appointment for April 13 with Dr. Heidorn, but he noted in his physician's orders that Slater did not appear, even after an HSU officer called Slater's housing unit three times. Dr. Heidorn stated in his affidavit that he did not investigate the reasons for Slater's absence because he did not consider the condition urgent, and that he rescheduled the appointment (to when is not specified). Slater maintained that he did not know about the April 13 appointment.

On April 24, Slater wrote to the HSU that he still had not been scheduled for a doctor's appointment, which, he insisted, he needed to address the irritation in his eye. He also complained for the first time of blurred vision. According to Slater, his condition that day was so obvious that a correctional officer called the HSU to ensure that it was examined. Four hours later, Dr. Heidorn examined Slater and determined that he had a sty in both eyes and he prescribed eye-drops and Cipro pills. Slater says that on April 27 he received the medications.

By late May the lump had grown to the size of a grape and Dr. Heidorn stated in his affidavit that he conferred with Greenwood about Slater's condition. They decided to send him to an opthamologist, who diagnosed Slater with chalazion, a chronic inflammation, *see* STEDMAN'S MEDICAL DICTIONARY 353 (28th ed. 2006), and Slater underwent surgery to correct it. Slater asserts that he underwent another surgery later in the year to correct the blurry vision in his left eye, from which he still suffers.

The district court granted summary judgment to the defendants. It found that, even assuming Slater suffered from a serious medical condition, he could not prove that either Greenwood or Dr. Heidorn was deliberately indifferent to his condition because he endured only a few ordinary delays in treatment. These treatment delays, the court explained, fell short of unnecessary and wanton infliction of pain.

On appeal, Slater essentially argues that he identified a genuine issue of fact regarding Greenwood's and Heidorn's failure to treat him between April 2 and April 27, which caused his vision to blur, enabled the sty to grow and become more painful, and necessitated multiple surgeries. Slater suggests in his reply brief that Dr. Heidorn and the HSU were at fault for not ensuring his presence at his April 13 doctor's appointment.

We review the district court's grant of summary judgment de novo. *See Hayes*, 546 F.3d at 522. To survive summary judgment on claims of deliberate indifference, Slater has to produce enough evidence for a reasonable jury to conclude that the defendants knew of a serious risk to his health and consciously disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 834-36 (1994); *Johnson v. Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006).

Slater's claims fail because he has not produced any evidence that either defendant *knew* that the condition posed a substantial risk to his health. First, regarding defendant Greenwood, Slater cannot point to any evidence showing that she knew that Slater suffered from *any* condition between April 2 and April 27, let alone a serious one. To the contrary, Dr. Heidorn asserts in his affidavit that Greenwood first learned of Slater's condition in late May, and Slater produces no evidence to call that assertion into question.

Similarly, Slater has produced no evidence that Dr. Heidorn *knew* that Slater's condition posed a serious risk before April 24, when he first evaluated Slater and prescribed medicine. Dr. Heidorn said in his affidavit that when Slater missed his April 13 appointment, he did not consider his condition to be serious, and Slater cannot point to anything in the record to challenge that assertion. In his reply brief, Slater implies for the first time that Dr. Heidorn was deliberately indifferent at the April 24 appointment because he prescribed drugs that treated only his sty, yet ignored his complaints of blurry vision. But Slater cannot raise an argument for the first time in a reply brief, *see, e.g., Park v. City of Chicago*, 297 F.3d 606, 617 n.8 (7th Cir. 2002); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995), particularly one that is so at odds with the nature of the claim that Slater presented in the district court—one that focused only on the *delay* in treatment between April 2 and April 27, *see Domka v. Portage County Wis.*, 523 F.3d 776, 783 n.11 (7th Cir. 2008); *Barnes v. Briley*, 420 F.3d 673, 678 n.2 (7th Cir. 2005).

Finally, Slater takes issue with a particular ruling at discovery. He argues that the district court abused its discretion by failing to compel the defendants to produce the Department of Corrections' rules, regulations, and policies regarding treatment of eye infections and serious medical needs. Slater insists that the records would have helped to prove that the defendants did not treat him in a reasonable time. But these formal documents could not have helped Slater's case because they would not reveal anything particularized about the defendants' treatment of him. And absent a clear showing that the denial of the motion to compel prejudiced Slater, the district court could not have abused its

discretion by not compelling the production of the documents. *See Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001).

AFFIRMED.